No. 3150.—H. KENDALL CARTER v. S. C. WILLIAMS, Administrator.

23  281
50  1125

Defendant owed plaintiff $8008. To secure this debt he sold to plaintiff three-fourths of his plantation, and gave his three notes, each for one-third of the debt, due at one, two and three years, with a stipulation in the agreement that if the debtor should promptly pay the notes at their maturity, the land was to revert to him again; but if he failed to pay the notes at maturity, then the right to recover back the plantation or the portion he had thus disposed of was forfeited. Held—That this transaction was a sale with the right of redemption, and not a mortgage given by the debtor to secure the debt.

APPEAL from the Ninth Judicial District, parish of Natchitoches. *Orsborne*, J. *Pierson & Levy*, for plaintiff and appellee. *Jack & Pierson*, for defendant and appellant.

TALIAFERRO, J. Freeborn G. Bartlett and the plaintiff, on the eighteenth of February, 1868, entered into a contract, the substance of which is as follows: Bartlett acknowledged to owe Carter $8008, and declared, "that for the purpose of securing unto the said Carter the said sum of money, I do hereby sell the undivided three-fourths part of my plantation," etc., describing the premises, and adds, "which sale I hereby make for and in consideration of said indebtedness to said Carter. In evidence of which indebtedness I this day furnish three promissory notes, each for $2669 43, dated this day and payable in one, two and three years after date, with eight per cent. per annum interest from maturity. Said notes are made payable to said Carter, and are not negotiable, and are also subject to all the stipulations contained in this act." The act then recites: "It is hereby agreed by and between the parties that in case the said Bartlett shall well and truly pay unto said Carter the said notes, according to their tenor, then he shall be entitled to the redemption of the property which he does hereby convey, and by absolute right, by reason of the payment of the notes."

It is then agreed that if the first note is not paid at its maturity, the right of redemption ceases if Carter so elects, and he takes the property as absolute owner. If, however, he should not so determine, the payment of the first note is thereby postponed to the maturity of the second note, when he has the same option; but in this case Bartlett has priority of choice, for it is one of the express stipulations that he also has the right at the end of the second year to terminate the right of redemption, and render Carter perfect owner of the property, "in case he should find at the end of two years that he can not pay said notes." It is clearly expressed that a failure to pay the notes was to operate a loss of the right of redemption, Carter taking in full ownership the property and restoring the notes to the maker of them, whose indebtedness became extinct. In the event the right of redemption should lapse by neither party taking action in regard to it, an amicable partition in kind was to take place between the parties. During the term agreed upon for the payment of the debt, Bartlett was to remain

36

upon the plantation and use the stock, working animals, etc., without the payment of rent or anything for the privilege, and the crops grown on the place to be exclusively his own property and to inure to his benefit alone. They were, however, to be shipped to Carter, as a commission merchant, and sold by him. The taxes and other charges on the plantation to be paid by Bartlett.

In the month of July following, about five months after this contract was entered into, Bartlett died. The present defendant, Williams, became his administrator. An inventory was made, and the land, plantation, stock, etc., were entered upon it as belonging in undivided ownership to Bartlett and Carter, an undivided fourth part only of the entire property being treated as belonging to the succession of Bartlett. On the seventh of May, 1869, the administrator filed a provisional account of his administration and a schedule of the debts of the estate, but the notes held by Carter for the $8008 owing to him under the contract referred to were not mentioned among the debts. An opposition was filed on the part of Carter to the administrator's account. It is alleged in this opposition that Carter is a creditor of the succession in the sum of $8008, evidenced by the three notes we have already described, which, it is alleged, are secured by mortgage by the act of eighteenth February, 1868, the one just recited.

These proceedings were first instituted in the parish court of Natchitoches, and a judgment was rendered in that court rejecting the opponent's claim. An appeal was taken to this court at the term at Natchitoches for August, 1869, and dismissed for want of jurisdiction in the parish court. The controversy was subsequently renewed in the district court, where it was concluded in January, 1871, by the rendition of a judgment in favor of the plaintiff and opponent, recognizing the act of eighteenth February, 1868, as a mortgage to secure the payment of the notes therein specified, and ordering their payment in due course of administration. From this judgment of the district court the administrator has appealed.

The character of the instrument forming the basis of this litigation, and the intention of the parties in executing it, are the principal inquiries in this case. A mortgage is a secondary obligation entered into to secure the performance of a principal or primary obligation. Is the act under consideration a secondary obligation? If secondary, what is the principal obligation? Can the notes be so considered? They are not negotiable, and were expressly made so. They are, moreover, expressly subordinated to the stipulations of the written act. The language of the written agreement is: "Said notes being payable to said Carter and are not negotiable, and are also subject to all the stipulations contained in this act." It is not declared that the property mentioned is mortgaged to secure the payment of these notes.

·On the contrary, the act in the outset recites, that "for the purpose of securing unto the said Henry Kendall Carter the said sum of money, the said Freeborn G. Bartlett does hereby sell the undivided three-fourths part of his plantation, containing six hundred acres," etc. ·After a description of the land and appurtenances sold, the act continues: "It is hereby agreed by and between the parties that in case the said Bartlett shall well and truly pay unto the said Carter the said notes according to their tenor, then he shall be entitled to the redemption of the property which he does hereby convey, and by absolute right, by reason of the payment of the notes." That is, he is to get back the land if he pays the notes. It is not stipulated that if the notes are not paid the creditor shall have the right to sell the land ·by judicial process, and apply the proceeds to the payment of the ·notes in the manner of proceeding to enforce a mortgage. No such proceeding is contemplated. The creditor is already the owner of the ·property, and if the notes are not paid they are to be returned to the maker, and the debtor loses the right of getting back the property. This discharge from his indebtedness is the consideration for which he ·sells three-fourths of his plantation. The contract is so far complete that the creditor can not pursue the debtor on the notes. The notes in this transaction represent no indebtedness of Bartlett to Carter. They are mere memoranda indicating sums of money, which, if paid according to their tenor, the creditor is willing to receive in lieu of the property he has already taken in payment of his debt, and which he is bound to permit the debtor, by paying these sums, to redeem. They are not subsisting obligations upon which the creditor can found .an action. We conclude, therefore, that the notes do not constitute the primary obligation. If this be true the act is not a mortgage. That it is a sale with right of redemption we think there can be no doubt. It has all the elements of a contract of that kind. The prop-·erty is declared to be sold; the price is the $8008 which the debtor owed. A term is stipulated within which he may redeem the property ·on paying certain sums of money in annual installments. A failure on the part of the seller to pay the first installment enables the buyer, if he thinks proper, to preclude the seller's right to redeem. If the buyer fails to give notice of his refusal to extend the term, it becomes thereby extended for another year. At the end of the second year both parties are empowered to declare the right of redemption at an ·end, and either may so declare. The party having the right of redemption expressly stipulates for himself the right to declare and elect that ·the said Carter is the absolute owner of the said property, now transferred to him in full release and extinguishment of said indebtedness of said Bartlett, "in case said Bartlett should find at the end of two years that he can not pay said notes."

It is argued that the act is a mortgage having the faculty of becoming a sale, if at the end of two years from the date of the act Bartlett should be unable to pay the notes, and should elect to declare Carter to be the owner of the property in lieu of the debt; and that Bartlett having died before the expiration of that time, and Carter not having declared the forfeiture of the right to redeem, no formal and final action has been taken in the matter. And it is, therefore, further held that the act is still a mortgage, and should be so enforced, as decreed by the district court.

We do not see the force of this reasoning. It is shown that the administrator has throughout disclaimed all right of the succession of Bartlett to three-fourths of the property in question, and that he has constantly resisted the claim set up by the plaintiff upon the notes. There is, therefore, now no remaining right of redemption or will to exercise that right if it remained.

It is therefore ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed. It is further ordered that the opposition to the administrator's account by the plaintiff be overruled and dismissed; that the notes upon which the opposition is founded be canceled and annulled, and that the admintrator's account, so far as relates to the opposition of the plaintiff, be approved and homologated, the plaintiff paying costs in both courts.

Rehearing refused.